# IN THE COURT OF APPEALS OF IOWA

No. 17-0970
Filed September 13, 2017

**IN THE INTEREST OF A.L., L.L., P.H., and B.H.,**
**Minor Children,**

**H.H., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Muscatine County, Gary P. Strausser, District Associate Judge.


A mother appeals the juvenile court order terminating her parental relationship with four children. **AFFIRMED.**


Jeffrey L. Powell of The Law Office of Jeffrey L. Powell, P.L.C., Washington, for appellant mother.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Christine E. Boyer, Iowa City, guardian ad litem for minor children.


Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

"I don't think that I have a problem." This testimony from Holly, a mother who denied that substance abuse remained an obstacle to reuniting with her children, did not ring true for the juvenile court.[1] The court ended Holly's parental relationship with four children: seventeen-year-old A.L., eleven-year-old L.L., seven-year-old P.H., and five-year-old B.H.[2] Holly challenges the court's order both on the statutory grounds for termination and on the best-interests determination. She asks for additional time for reunification. After examining the record and the law, we defer to the juvenile court's credibility findings and reach the same conclusions regarding the welfare of the children.[3]

### I.     Facts and Prior Proceedings

This family came to the attention of the Iowa Department of Human Services (DHS) in early December 2015 based on a report Holly and her paramour were using methamphetamine while caring for the children. According to the DHS investigation, Holly expressed paranoid beliefs and would stay up all

---

[1] Specifically, the court found: "Throughout the underlying child in need of assistance [CINA] case Holly . . . denied the use of controlled substances. Her denials were not credible."

[2] The father of A.L. and L.L. is deceased. The father of P.H. and B.H. did not appear at the termination hearing. The juvenile court determined he had abandoned the children; he did not appeal.

[3] We review child-welfare proceedings de novo, which means examining both the facts and law and adjudicating anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We are not bound by the juvenile court's fact findings, but we give them weight, especially when measuring witness credibility. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Proof of the statutory elements must be clear and convincing, which means we see no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

night before crashing and sleeping for the entire day.[4] The youngest child, B.H., tested positive for exposure to methamphetamine. Because Holly had not paid the water bill or rent, the family faced the loss of utilities and possible eviction.[5] The children went to live with Holly's sister and remained in their aunt's home throughout the case.

In April 2016, the juvenile court adjudicated A.L., L.L., P.H., and B.H as CINA, finding they were "imminently likely to suffer adjudicable harm due to their mother's use of methamphetamine." In May 2016, Holly underwent a substance-abuse evaluation, which concluded she met "the criteria for amphetamine use disorder/mild and unspecified cannabis use disorder." Holly did not complete the recommended outpatient treatment.

Holly and her paramour did not have steady employment or housing during the summer and fall of 2016. They were evicted from a rental house in August, lived at a motel for several months, and then moved in with relatives.

Drug use continued to be an issue. In September 2016, Holly tested positive for methamphetamine, and the next month, she tested positive for amphetamines, which the treatment staff attributed to methamphetamine use. But Holly continued to deny using drugs. Holly refused to undergo further drug testing until February 2017. She also revoked the releases allowing the treatment provider to share information with the DHS.

---

[4] Holly had not been attending to the children's needs. B.H. had not had immunizations since 2012, the year she was born. L.L. had critical dental issues left unaddressed. P.H. was having trouble behaving in school, but Holly resisted having him evaluated and possibly placed on medication. Holly's inattention foisted A.L. into the role of caretaker for her younger siblings.

[5] The juvenile court noted Holly struggled to provide for the children's basic needs, despite the fact she had "significant income" from a death benefit provided for the upkeep of the two older children.

Holly was inconsistent in her visitations with the children.[6]  In the words of the DHS worker: "[S]he really ebbs and flows."  Holly missed five of the ten offered visitations from January 1 through March 15, 2017.

The State filed a petition to terminate parental rights in mid-February 2017.  The juvenile court held a hearing on the State's petition at the end of March.  Holly—who was thirty-nine years old—testified she had not used methamphetamine since she was eighteen.  The DHS worker testified until Holly was honest about her history of substance abuse, she could not make "any forward progress."  The children's guardian ad litem (GAL) supported termination, explaining that unfortunately, Holly treated the sixteen months of the CINA case as "an act of defiance" during which Holly's belief her rights had been violated took "priority over actually doing what needed to be accomplished to reunify" with the children.

The juvenile court issued its decision terminating parental rights in early June of 2017.  The court relied on Iowa Code sections 232.116(1)(e) (as to A.L. only), and (f) and (*l*) (as to all the children).  Holly now appeals.

II.    **Analysis of Mother's Claims**

A.  **Statutory Grounds for Termination**

Holly contests the State's proof for both sections (f) and (*l*).  When the juvenile court relies on several grounds, "we need only find termination appropriate under one of [those] sections to affirm."  *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014).

---

[6] The oldest child, A.L., refused to attend visits.  Holly last interacted with her teenaged daughter in the summer of 2016.  The DHS worker testified A.L. favored having her mother's rights terminated so she could be adopted by her maternal aunt and uncle.

We focus on subsection (f), which requires proof of the following elements: (1) the children are four years of age or older; (2) they have been adjudicated as CINA under section 232.96; (3) they have been removed from the parent's physical custody for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) clear and convincing evidence exists that the children cannot be returned to the parent's custody as provided in section 232.102 at the present time. *See* Iowa Code § 232.116(1)(f).

Holly disputes only the fourth element. She "disagrees that the children could not have been safely returned to her care at the time of the termination hearing." In support of her position, Holly highlights testimony that she and her paramour were both employed and recently rented a house in Bennett, Iowa, large enough to accommodate the children. Holly also points to their testimony that "they were willing to fully cooperate with services, including drug testing."

This fourth element is met when the record shows the children cannot be returned home because the risk leading to the CINA adjudication was not resolved or the return would expose the children to harm that could result in a new CINA adjudication. *See In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988). The State's proof satisfied this element.

Like the juvenile court, we find the evidence of Holly's persistent and implausible denials of her substance-abuse history to be more telling than the short-lived stability of her housing situation. Ensuring a safe return home requires more than renting a roomy house. Holly had not provided her caseworker with the address of the Bennett house until the termination hearing.

That failure to share information was emblematic of Holly's lack of candor toward the DHS and the juvenile court throughout the case. The juvenile court aptly summarized the difficulty:

> Holly . . . continues to deny that she has a substance abuse problem. Her denial continues to not be credible. . . . She still refuses to take responsibility for the issues which led to adjudication. She continues to deny that any issues exist and, as a result, she has failed to make any progress.

A parent's unresolved substance-abuse problem presents an ongoing danger to children. *In re J.K.*, 495 N.W.2d 108, 113 (Iowa 1993). This record contains clear and convincing evidence the children could not be returned to Holly's custody without risking a repeat episode of neglect or maltreatment stemming from her methamphetamine abuse. We agree with the juvenile court's conclusion on the statutory basis for termination.

### B. Best Interests and Additional Time

Holly next argues termination was not in the children's best interests and asks for more time to work toward reunification. She asserts: "The children were safe and doing well in their family placement. Little or no harm would have been done to the children had the court granted Holly a few additional months."

In our evaluation of the children's best interests, we give primary consideration to their safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional condition and needs. *See* Iowa Code § 232.116(2); *see also In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). In addition, the juvenile court may decline to terminate the parent-child relationship when "[a] relative has legal custody of the child." *See* Iowa Code § 232.116(3)(a). But the court is not obligated to forego termination if this

factor is satisfied. *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011). To defer permanency, a court is required to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

We find the safety and long-term well-being of these children is best served by termination of Holly's parental rights despite their placement with relatives. Given Holly's recalcitrant attitude, neither the DHS worker nor the GAL believed the need for the children's removal would disappear after six more months. Throughout the case, Holly has been in denial about her substance-abuse problem and its devastating impact on her children. Her lack of engagement in treatment leaves a looming question mark regarding her ability to be an effective parent. While the three younger children have a strong affection for their mother, they also have a close bond with their aunt and uncle. Waiting longer for permanency is not a viable option under these facts. *See P.L.*, 778 N.W.2d at 41 (stating courts will not deprive a child of permanency after the State has proved a statutory ground for termination "by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child"). We agree with the juvenile court's decision to terminate parental rights.

**AFFIRMED.**